**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| VONAGE HOLDINGS CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 07-507*** |
| NORTEL NETWORKS, INC. and | ) |
| NORTEL NETWORKS, LTD., | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S ANSWERING MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS, TRANSFER OR STAY**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888 (T)
302-654-2067 (F)
*Attorneys for Plaintiff Vonage Holdings Corp.*

*Of Counsel:*

Scott W. Doyle
Steven Barber
Anthony A. Onorato
R. Whitney Winston
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, D.C. 20036-1795
Phone: (202) 429-3000
Fax:     (202) 429-3902

Dated:  October 29, 2007

**TABLE OF CONTENTS**

I.     STATEMENT OF NATURE AND STAGE OF PROCEEDING ....................................1

II.    SUMMARY OF ARGUMENT ...............................................................................................1

III.   LEGAL PROPOSITIONS ON WHICH THE PARTY RELIES ........................................2

IV.    STATEMENT OF FACTS ......................................................................................................3

V.     ARGUMENT.............................................................................................................................4

    A.    Nortel's "First Filed" Argument Is Based on a Transparent Tactical Maneuver in the Texas Action, and Does Not Merit Dismissal or Transfer of this Case..........................................................................................................4

    B.    The Present Action Should Not Be Dismissed Because Plaintiff's Choice of Forum Is Legitimate and Reasonable ..................................................8

    C.    There Is No Legitimate Reason to Transfer This Case............................................9

        1.   Plaintiff's Choice Of Forum Is "Paramount"...............................................10

        2.   Both the Public and Private Interests Weigh Heavily Against Transfer ..........................................................................................................11

    D.    There is No Need to Stay the Present Action .........................................................13

VI.    CONCLUSION.......................................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*ADE Corp. v. KLA-Tencor Corp.*,
    138 F. Supp. 2d 565 (D. Del. 2001)..................................................................................10, 11

*Affymetrix, Inc. v. Synteni, Inc.*,
    28 F. Supp. 2d 192 (D. Del. 1998)...........................................................................................10

*Allied-Signal, Inc. v. Honeywell, Inc.*,
    No. 90-395,1991 WL 495770 (D. Del. Feb. 6, 1991)..............................................................10

*APV N. Am., Inc. v. Sig Simonazzi N. Am,. Inc.*,
    295 F. Supp. 2d 393 (D. Del. 2002).......................................................................................5, 6

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*,
    821 F. Supp. 962 (D. Del. 1993)............................................................................................8, 9

*EEOC v. Univ. of Pennsylvania*,
    850 F.2d 969 (3d Cir. 1988)......................................................................................................5

*Genentech, Inc. v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed. Cir. 1993)..............................................................................................5, 13

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995).......................................................................................................11

*Schering Corp. v. Amgen, Inc.*,
    969 F. Supp. 258 (D. Del. 1997)................................................................................................5

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d Cir. 1970)..................................................................................................8, 10

*Time Warner Cable, Inc. v. GPNE Corp.*,
    497 F. Supp. 2d 584 (D. Del. 2007)...........................................................................................5

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*,
    157 F.R.D. 215 (D. Del. 1993) ............................................................................................9, 11

**STATUTES**

28 U.S.C. § 1404(a) (2000)..............................................................................................10, 11

**I.      STATEMENT OF NATURE AND STAGE OF PROCEEDING**

On August 27, 2007, Vonage Holdings Corp. ("Vonage") filed this action for a declaratory judgment of non-infringement and invalidity of U.S. Patent Nos. 6,091,808, 6,445,695, and 7,050,861 (collectively, the "Nortel Patents") against defendants Nortel Networks, Inc. ("NNI") and Nortel Networks, Ltd. ("NNL") (collectively, "Nortel"). On October 10, 2007, Nortel filed a motion to dismiss, stay, or transfer this action to the Northern District of Texas (D.I. 15) ("Motion"). For the reasons set forth below, Nortel's Motion should be denied.

**II.     SUMMARY OF ARGUMENT**

Nortel has accused Vonage of infringement and—rather than file a separate action as to these unrelated patents covering distinct technology—Nortel has improperly attempted to add the Nortel Patents to a suit pending in the Northern District of Texas (the "Texas Action"). Vonage has properly filed this declaratory judgment action in Delaware, seeking a declaration that Vonage does not infringe the Nortel Patents and that the Nortel Patents are invalid. In so doing, Vonage is merely seeking to resolve these important issues in a timely manner.

Nortel incorrectly accuses Vonage of forum shopping here. However, it is Nortel that prompted this action by threatening Vonage, and by seeking to derail Vonage's Texas Action by the eleventh-hour addition of patents that are wholly unrelated to that case. The Nortel Patents do not belong in the Texas Action—their claimed technologies are completely distinct from the Vonage Patents at issue in that case, and would more than double the size of an already complicated and long-delayed litigation. Nortel's gamesmanship in Texas is merely calculated to further delay a suit that was already three years old when Nortel first attempted to assert the Nortel Patents. This Court should not facilitate Nortel's tactical maneuvering in the Texas Action by granting Nortel's Motion here.

Moreover, the instant suit is properly before this Court, and should not be transferred or stayed. As the Plaintiff in the instant action, Vonage is free to choose Delaware as its forum, where both Vonage and NNI are incorporated. In contrast, Nortel can point to no legitimate public or private interest that would overcome the requisite deference to Plaintiff's choice of forum—particularly since Nortel chose to avail itself of the benefits of Delaware law by incorporating here—and thus has failed to show sufficient grounds for transfer. Finally, there is no reason this Court should stay proceedings in this case. Nortel's motion for leave in the Texas Action is likely to fail, given that case's advanced age, and Nortel's transparent gamesmanship in Texas should outweigh any deference that might otherwise be accorded to a "first filer." In any event, Vonage asserts that it is the true "first filer" under the relevant law.

Accordingly, and as discussed in greater detail below, Nortel's Motion to Dismiss, Transfer, or Stay should be denied.

## III.   LEGAL PROPOSITIONS ON WHICH THE PARTY RELIES

1.   This case should proceed as a stand-alone suit in Delaware because it is the first case to be filed on the Nortel Patents. Nortel's late attempt to inject new, unrelated patents into the Texas Action is wholly improper and is likely to fail. The Nortel Patents should not be added to the Texas Action because they cover three areas of technology that are not only distinct from the technology of the Vonage Patents-in-suit in Texas, but are also distinct from each other. Any infringement claims based upon the Nortel Patents are wholly unrelated to the Texas Action, which is already three years old. In short, there is no history between the Nortel Patents and the Texas Court, and no judicial efficiencies would be lost by failing to litigate the Nortel Patents as part of the Texas Action.

2. Since Nortel has threatened infringement by attempting to add its patents to the Texas Action, Vonage has a right to bring this declaratory judgment action in order to promptly adjudicate non-infringement and invalidity under the Nortel Patents.

3. Vonage's choice of forum, as the declaratory judgment plaintiff, is entitled to substantial deference.

4. Vonage's choice of this Delaware forum is legitimate and reasonable, since both Vonage and NNI are incorporated here. It is the law of this District that a Delaware corporation should not be successful in arguing that this forum is inconvenient, absent some showing of a unique or unexpected burden. Nortel has not and cannot come close to making such a showing.

5. In determining whether transfer is appropriate, Courts must consider various public and private interests. The variant public and private interests all weigh heavily against transferring this case to the Northern District of Texas.

## IV. STATEMENT OF FACTS

Nortel's motion is based largely upon a misleading characterization of the relationship between the Texas Action and the instant case. A more accurate description is provided below.

The Texas Action was commenced in July 2004, when Digital Packet Licensing, Inc. ("DPL") filed an infringement suit against AT&T Corp., SBC Communications, Inc., Sprint, and Verizon Communications, Inc. in the Northern District of Texas (the "Texas Court"), alleging infringement of U.S. Patent No. 4,782,485 (the "'485 Patent"). In March 2005, Nortel—the manufacturer of the allegedly infringing equipment—filed a defensive declaratory judgment action against DPL, asserting non-infringement and invalidity as to the '485 Patent and U.S. Patent No. 5,018,136 (the "'136 Patent").[1] The two actions were consolidated a month later.

---

[1] The '136 Patent is a continuation of the '485 Patent.

In late 2006, following assignment of DPL's patents to Vonage, the Northern District of Texas granted DPL's motion to substitute Vonage as the plaintiff and declaratory judgment defendant in the consolidated litigation. Vonage answered Nortel's declaratory judgment complaint and asserted counterclaims alleging infringement of the '485 and '136 patents, and claiming infringement of U.S. Patent No. 5,444,707 (the "'707 Patent") (collectively the "Vonage Patents"). All three Vonage Patents claim related technology, which involves, specifically, voice compression.

On July 17, 2007, Nortel first sought leave to amend its counter-counterclaims to assert infringement claims as to the Nortel Patents. As distinct from the Vonage Patents, the Nortel Patents do not relate to the patented technology of voice compression/packetization for transmission of digital voice signals in Internet telephony, but rather claim wholly unrelated inventions relating to user interface and control features.

On August 7, 2007, Vonage opposed Nortel's Motion for Leave to Amend the Texas Action. Vonage fully anticipates that the Texas Court will deny Nortel's Motion because it is untimely, and because the Nortel Patents would thrust the case into a quagmire of delay and undue complexity. Faced with Nortel's threatened infringement allegations on the Nortel Patents, and expecting that they will not be included in the Texas Action, Vonage filed the instant action on August 17, 2007, to resolve the uncertainty imposed by Nortel.

## V.     ARGUMENT

### A.     Nortel's "First Filed" Argument Is Based on a Transparent Tactical Maneuver in the Texas Action, and Does Not Merit Dismissal or Transfer of this Case

Nortel argues that this suit should be dismissed under the "first filed" rule, merely because Nortel sought to add the Nortel Patents to the Texas Action before Vonage filed the instant suit. However, Nortel's maneuver in Texas—attempting to add the unrelated Nortel

- 4 -

Patents to a suit that had been pending for three years and is in the midst of *Markman* proceedings—serves no purpose other than to delay and complicate that litigation. In effect, Nortel asks this Court to facilitate its gamesmanship in Texas by dismissing or transferring this case. Yet, if either party should benefit from the "first filed" rule, it should be Vonage, not Nortel, because Nortel's claims under the Nortel Patents should not be added to the Texas Action, and the instant case is the true first-filed action.

Nortel does not, and could not, seriously argue that the mere filing of a motion in Texas makes it the "first filer."[2] In fact, Nortel concedes that if the Texas Court denies it leave to add the Nortel Patents, this case should remain as a "standalone action." D.I. 16, at 1.[3] Nortel does

---

[2] The first-to-file rule applies where a Court has "*taken possession*" of two cases with the same subject matter. *See Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp. 2d 584, 589 (D. Del. 2007); *EEOC v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988). First-to-file status does not, however, apply whenever a plaintiff merely raises new claims as to which a Court may or may not accept jurisdiction.

As discussed below, the Nortel Patents should not be added to the Texas Action. Without inclusion in the Texas Action, no other Court will have taken initial possession of claims related to the Nortel Patents, and this Court will have initial jurisdiction over the subject. *See Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) ("The general rule favors the forum of the first-filed action, whether or not it is a declaratory action."), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

[3] Specifically, Nortel has stated: "If Nortel's motion to consolidate its patent claims into the ongoing litigation in Texas is denied, this Court should grant Vonage its wish, and transfer the present case to the Northern District of Texas as a standalone action." D.I., 16 at 1. While Vonage opposes any transfer of this action, it agrees with Nortel's position that this case should remain a stand-alone suit if Nortel's motion to consolidate is denied.

Nortel must concede this point because it is clear that the first-to-file rule would not apply if the Nortel patents are not added to the Texas Action. The Third Circuit has consistently applied the first-to-file rule only for cases involving the same subject matter, *i.e.* the same patents. *See Time Warner, Inc.*, 497 F. Supp. 2d at 589; *EEOC*, 850 F.2d at 971 ("[I]n all cases of federal concurrent jurisdiction, the court which first has possession of the *subject* must decide it.") (emphasis added) (citation omitted). The rule focuses on identicalness of *subject*, not whether the identity of the parties is the same. *See Time Warner*, 497 F. Supp. 2d at 589; *Schering Corp. v. Amgen, Inc.*, 969 F. Supp. 258 (D. Del. 1997). Thus, where two cases raise claims on different patents, dealing with different technologies, the first-to-file rule does not apply as between those two actions. *See, e.g., APV N. Am., Inc. v. Sig Simonazzi N. Am,. Inc.*,

not, therefore, dispute that this would be the controlling suit upon the Texas Court's denial of its motion. Rather, Nortel's "first filed" argument is based solely upon a misguided presumption that its patents, covering different technologies, will be accepted into the Texas Action.

In making its fanciful and self-serving assumption, Nortel wholly ignores the fact that the technologies claimed in the Nortel Patents are entirely distinct from those embodied in the Vonage Patents, which are at issue in the Texas Action. While the Nortel Patents and Vonage Patents generally relate to Internet telephony, that is where the similarity ends. "Internet telephony" is not a catch-all term. Rather, it is a broad technological field wherein many independent components may be mixed and matched to achieve variations on the end-goal of sending telephone calls over the Internet.[4] Further, it is incorrect to say that the Vonage Patents are even limited to the Internet in scope, when, in fact, they broadly cover other types of networks capable of carrying packetized voice. Thus, the fact that the Nortel and Vonage Patents both loosely fall under the "Internet telephony" umbrella is not enough to warrant joining the Nortel Patents to the Texas Action, nor to warrant application of the first-to-file rule. *See APV*

---

295 F. Supp. 2d 393, 398 (D. Del. 2002) (finding that a "Texas action and the Delaware action are not the same, because they implicate different patents and different technologies").

[4] Nortel tries to hide its transparent attempt to derail the Texas Action by broadly noting that all of the patents involve "Internet telephony." D.I. 16, at 1. The impropriety and extent of Nortel's overstatement in grouping the Nortel Patents and Vonage Patents together under the "Internet telephony" umbrella might be better illustrated by way of analogy:

Nortel suggests that its patents are related to the Vonage Patents because all involve Internet telephony. This is akin to suggesting that all patents relating to automobile components are related, just because they can all be used in a car. Yet, it is clear that if one were to have patents for an engine, a user controlled navigation system, and car seats, there would be virtually no overlap in the technology claimed in those patents, and that they would be totally unrelated for the purposes of an infringement suit.

The Vonage Patents go to the core of how voice is actually transported over the internet or similar packet network. Like an engine, they provide the capability to actually transport voice from one place to another. In contrast, Nortel's Patents are more like a car's added features (*i.e.*, a user controlled navigation system), which may enhance the Internet telephony experience, but are by no means central to how the system runs, as with the Vonage Patents.

*North Am.*, 295 F. Supp. 2d at 397 (finding two cases "different" for the purposes of the first-to-file rule because one involved the structure of a bakery conveyor, while the other dealt only with the magnetic grids for holding baking pans to the conveyor).

The three Vonage Patents, two of which have the same inventor and identical specifications, cover compression, packetization, and transmission in digital voice networks. The Nortel Patents cover three areas of technology that are not only distinct from the technology of the Vonage Patents, but are also distinct from each other. The '808, '695, and '861 Patents cover, respectively: (1) a terminal "proxy" to make another terminal appear to look like a terminal of a different type; (2) a user interface allowing a user to access and use a remote server to initiate phone calls; and (3) embedding software code into messages to ultimately control destination terminals. Clearly, none of the Nortel patented areas involves the compression, packetization, and digital voice transmission topics covered by the Vonage Patents.

Moreover, if the Nortel Patents are allowed into the Texas Action, it would require abundant new discovery, having virtually no overlap with the current case. For example, adding the Nortel Patents would first require discovery on substantially all documents related to the Vonage system and operation, which are not currently at issue in the case. At present, only the infringing products and systems of Nortel and other defendants—all of whom are alleged to infringe—are relevant. Additionally, litigating the Nortel Patents would require nearly all new witnesses, including but not limited to the patents' seven named inventors and new experts for the patents' distinct technologies.

This explosion in discovery would effectively nullify the operative scheduling order in the Texas Action. Under the deadlines set in that order, the parties have already taken substantial discovery and exchanged proposed claim constructions with respect to the Vonage patents at

issue, and Vonage has served its preliminary infringement contentions. Addition of the Nortel Patents would inevitably push the already long-delayed Texas Action's discovery schedule back for many more months. It is unlikely that the Texas Court will allow Nortel to so further delay and complicate a case that is already over three years old. As such, this Court should take jurisdiction over this case and move it forward so as to resolve the threat of infringement imposed by Nortel.

### B.     The Present Action Should Not Be Dismissed Because Plaintiff's Choice of Forum Is Legitimate and Reasonable

Plaintiff's choice of this Delaware forum is perfectly legitimate and reasonable, given the parties' incorporation here, and the sophistication of this Court in patent matters.

As the plaintiff, Vonage's choice of this forum should be shown deference. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (Plaintiff's choice of forum is "paramount"). Nortel tries to sidestep this plain fact by accusing Vonage of "forum shopping." D.I. 16, at 4. However, Nortel's unsupported and meritless accusations should not be tolerated. Vonage has proper reasons for electing to file in this Court. Nortel completely ignores the fact that both Vonage and NNI are incorporated in Delaware. This fact, in and of itself, justifies Vonage's choice of forum.

This Court has consistently held that incorporation in Delaware is a compelling reason to bring suit in this District. In *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 821 F. Supp. 962 (D. Del. 1993), the Court expressly held that a plaintiff's choice of Delaware should be accorded deference, even if the only Delaware contact was that the defendant was incorporated here. The Court explained:

> [T]he fact that BDVA incorporated in Delaware should not be disregarded lightly. By incorporating in Delaware, it can be assumed that BDVA desired the benefits it believed Delaware provides to chartered corporations. BDVA chose Delaware as its

>legal home and should not complain that another corporation has decided to sue BDVA in Delaware.

*Id.* at 965. Like the defendant in *Critikon*, NNI chose to reap the benefits of Delaware incorporation. As NNI deliberately availed itself of this Court's jurisdiction by incorporating in Delaware, it is unclear why it is now so opposed to litigating its patents here. Whatever Nortel's motives—whether to unduly delay the Texas Action, or other—the fact remains that NNI chose Delaware as its legal home, and having enjoyed the benefits of Delaware incorporation, should expect to respond to litigation here. *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993).

It should also be noted that Nortel's forum shopping accusations are factually incorrect. Nortel has suggested that Vonage somehow chose the Northern District of Texas as "its initial choice of forum." D.I. 16, at 4. In fact, however, Vonage *never* chose Texas. In the Texas Action, the venue was chosen by Vonage's predecessor, DPL, years before Vonage ever became the plaintiff. Accordingly, any insinuation that Vonage is choosing its forums for suspect purposes is just plain wrong.

### C. There Is No Legitimate Reason to Transfer This Case

Nortel's attempt to transfer this action to the Northern District of Texas should be denied. Nortel has tried to exploit the Nortel Patents as leverage in the Texas Action, and it now further seeks to gain an unfair tactical benefit by forcing the transfer of Vonage's rightly-filed stand-alone suit to Texas. Nortel could have sued for infringement of its patents at any point since their issuance,[5] in a forum of its own choosing. In fact, Nortel could have brought these claims in a separate suit in the Northern District of Texas. Instead, showing its true intentions to delay

---

[5] The '808 Patent issued on July 18, 2000; the '695 Patent issued on September 3, 2002; and the '861 Patent issued on May 23, 2006.

and complicate the issues in Vonage's suit, Nortel waited until a strategic point in the Texas Action to attempt to hijack Vonage's case by attempting to add its unrelated patents into the same case. In order to protect its interests against Nortel's meritless threats, Vonage has merely exercised its right to seek declaratory judgment in Delaware—a forum that it deems most appropriate, since both NNI and itself are Delaware corporations. Plaintiff's choice of this forum is entitled to deference. Moreover, both the public and private interests weigh heavily in favor of maintaining this case here.

1. Plaintiff's Choice Of Forum Is "Paramount"

Nortel seeks to transfer this action pursuant to 28 U.S.C. § 1404(a) (2000), which provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.* It is the movant's burden to establish the need to transfer, and the plaintiff's choice of venue is a "paramount consideration," which should not be "lightly disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Thus, unless the "balance of conveniences of the parties is strongly in favor of [the] defendant, 'the plaintiff's choice of forum should prevail.'" *Shutte*, 431 F.2d at 25 (citation omitted); *see also ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 567-68 (D. Del. 2001); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 197-98 (D. Del. 1998). Transfer should be denied if the factors are evenly balanced or weigh only slightly in favor of transfer. *See Allied-Signal, Inc. v. Honeywell, Inc.*, No. 90-395,1991 WL 495770, at *2 (D. Del. Feb. 6, 1991).

Despite this clear law, Nortel's motion misses a fundamental point—that it is Vonage's right, as the plaintiff, to choose a suitable venue, and that this choice should be respected. Instead, Nortel focuses much attention upon a previous Vonage statement—made in the Texas Action briefings—that Vonage would be "willing" to litigate these issues in Texas. Nortel has

- 10 -

taken that statement out of context. Vonage did not state, and has never stated, that it believes Texas is the best forum for litigating the Nortel Patents. As Vonage has consistently made clear, had Nortel elected to file a separate suit in the Northern District of Texas, rather than seeking to derail the Texas Action, Vonage might not have sought transfer of that separate suit. However, such a hypothetical is not before this Court because Nortel opted instead to attempt to add the Nortel Patents to the Texas Action. Once that occurred, Vonage was fully entitled to file the instant suit in Delaware, rather than accept Nortel's gamesmanship in Texas.

2. <u>Both the Public and Private Interests Weigh Heavily Against Transfer</u>

As both Vonage and NNI are incorporated in Delaware, Vonage has rightly chosen to bring this action here. While status as a Delaware Corporation is not *necessarily* dispositive, "[a]bsent some showing of unique or unexpected burden, these corporations should not be successful in arguing that litigation in their state of incorporation is inconvenient." *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993); *see also ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565 (D. Del. 2001). Nortel cannot meet this high threshold.

In analyzing inconveniences and burdens under 28 U.S.C. § 1404(a), "there is no definitive formula or list of factors to consider," but "courts consider many variants of the private and public interests protected by the language of § 1404(a)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Private interests have included: plaintiff's preference; defendant's preference; convenience of the parties; convenience of the witnesses; and location of books and records. *Id.* Public interests may include: enforceability of the judgment; judicial economy; relative administrative difficulty in two fora resulting from court congestion; and local interest in deciding local controversies at home. *Id.* These factors do not weigh in favor of transfer to the Northern District of Texas.

First, private interests weigh heavily against transfer here. Vonage, as the plaintiff, has expressed its desire to litigate the Nortel Patents in Delaware, where both NNI and itself are incorporated. While Nortel wishes to litigate the patents in Texas, D.I. 16, at 5, it has provided no legitimate reason for that preference. Rather, by seeking to add these unrelated patents to the already long-delayed Texas Action, Nortel could only distract the Texas Court from the Vonage Patents already at issue there. The relative burden to Nortel in trying this case in Delaware is actually no greater than trying it in Texas. NNI is a Delaware corporation with its principal place of business in North Carolina. NNL is a Canadian corporation with its principal place of business in Canada. Moreover, as discussed above, litigation of the Nortel Patents would necessarily center around the *Vonage* system, which is alleged to infringe those patents. As Vonage is headquartered near Delaware, in New Jersey, Delaware would certainly be a more convenient location for examination of the Vonage system. If anything, Texas would be a significantly *less* convenient location for this reason.

Second, the public interest also weighs against transferring this action. As discussed at length in Part V.A. of this memorandum, there would be virtually no overlap in discovery between the Nortel Patents and Vonage Patents. The witnesses in this case would include seven completely different inventors and new experts. Moreover, examination of the Vonage system would introduce entirely new and abundant document discovery. Thus, if this case remains in the District of Delaware, there will be no need to coordinate discovery between this case and the Texas Action. Furthermore, *any familiarity that Judge Means has gained with the Vonage Patents would simply not translate to the litigation of the distinct technology claimed by the Nortel Patents*. There is no danger of inconsistent determinations, since the patents are

unrelated. In contrast, transferring this case to Texas could only distract from, or delay, the already three-year-old Texas Action.

### D. There is No Need to Stay the Present Action

There is also no need to stay this action pending resolution of Nortel's motion to add claims in Texas. Given the complexity of the issues and the many other commitments on the Texas Court's docket, it may take many months for the Texas Court to resolve Nortel's motion. At that time, for all the reasons discussed above, there is little chance that the Texas Court will add Nortel's new unrelated claims, thereby further delaying the already long-pending and complex Texas Action. And since Nortel was not a legitimate "first filer" in Texas, there is no reason this Court needs to defer to the Texas Court.

In short, given Nortel's infringement allegations, and Vonage's substantial interest in timely resolving this issue in order to safely conduct its business, this declaratory judgment action should go forward with an appropriate schedule. *See Genentech*, 998 F.2d at 937 (explaining that a declaratory action is appropriate "[w]hen there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity"). Accordingly this action should not be stayed.

## VI. CONCLUSION

For all of the abovementioned reasons, Nortel's Motion to Dismiss, Transfer or Stay should be DENIED.

ASHBY & GEDDES

*/s/ Steven J. Balick*

_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888 (T)
302-654-2067 (F)

*Attorneys for Plaintiff Vonage Holdings Corp.*

*Of Counsel:*

Scott W. Doyle
Steven Barber
Anthony A. Onorato
R. Whitney Winston
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, D.C. 20036-1795
Phone: (202) 429-3000
Fax:    (202) 429-3902

Dated:  October 29, 2007
185385.1

- 14 -